UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————X

OSWALD BONCEUR,

                                        Plaintiff,        20-CV-10923

                                        **PLAINTIFF'S MEMORANDUM**
—Against—                               **OF LAW IN OPPOSITION TO**
                                        **DEFENDANT'S 12 (b)(6) MOTION**

HAVERSTRAW-STONY
POINT CENTRAL SCHOOL DISTRICT
d/b/a/ NORTH ROCKLAND CENTRAL
SCHOOL DISTRICT, MICHAEL SENNO,
*individually,* and ROSE SIRA*, individually,*
*and* ERIC BAIRD*, individually*

                                        Defendants

—————————————————————————————X

## INTRODUCTION

      Plaintiff, by his attorneys, Law Offices of Ambrose Wotorson, submits the instant

Memorandum of Law in Opposition to Defendants' Motion to Dismiss pursuant to Federal Rule

of Civil Procedure 12 (b)(6). Contrary to defendants' assertions, the Amended Complaint in this

case plausibly alleges that Plaintiff has been subjected to a hostile work environment because of

his race, prior alienage, national origin, age, FMLA requests, and his prior protected activities.

## STANDARD OF REVIEW AND STATEMENT OF FACT

      To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556*

*U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).* A claim is

facially plausible "when the Plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at*

*678 (citing Twombly, 550 U.S. at 556).* The Plaintiff must allege sufficient facts to show "more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678 (citing*

*Twombly, 550 U.S. at 557).* However, this "flexible 'plausibility standard'" is not a heightened

pleading standard, *In re Elevator Antitrust Litig., 502 F.3d 47, 50 n.3 (2d Cir. 2007),* and "a

Amended Complaint. . . does not need detailed factual allegations" to survive a motion to

dismiss, *Twombly, 550 U.S. at 555.*

In considering a motion to dismiss under *Fed. R. Civ. P. 12(b)(6),* a court is ordinarily

limited to consideration of the factual allegations set forth in the Plaintiff's Amended Complaint.

*Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007).* However, the court may supplement those

allegations with facts from documents either referenced therein or relied upon in framing the

Amended Complaint, *see DiFolco v. MSNBC Cable L.L.C. , 622 F.3d 104, 111 (2d Cir.2010),* or

documents upon which the Amended Complaint solely relies and which are integral to it, *Roth ,*

*489 F.3d at 509.* "[A] Plaintiff's reliance on the terms and effect of a document in drafting the

Amended Complaint is a necessary prerequisite to the court's consideration of the documents on

a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc. ,*

*282 F.3d 147, 153 (2d Cir.2002).*

As will be shown, the Amended Complaint plausibly alleges facts that are cognizable

under racial, prior alienage, national origin, age, FMLA interference, retaliation and hostile work

environment theories. The facts are contained in the well-plead and plausible Amended

Complaint, which will be cited throughout this brief.

**POINT I**

**THE AMENDED AMENDED COMPLAINT PLAUSIBLY ALLEGES AGE
DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER
SECTION 1983 AND THE ADEA[1]**

---

[1] The applicable statute of limitations for § 1983 claims arising in New York is three years. *See
Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). "Federal law determines when a
[§] 1983 cause of action accrues, and . . . that accrual occurs when the Plaintiff knows or has

Defendants argue that Plaintiff has failed to make out age discrimination and hostile work environment claims. Defendants' arguments are meritless.

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).* Section 1983 does not establish substantive rights, but it provides a means of redress for the deprivation of rights established elsewhere. Id. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 2001)).*

An equal protection violation based on discrimination requires a Plaintiff to show that "a government actor intentionally discriminated against [her] on the basis of [a protected characteristic]." *Hayden v. Cty. of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).* To state a claim for discrimination, a Plaintiff must allege: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory

---

reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).*Kunik v. N.Y.C. Dep't of Educ.*, 15-CV-9512 (VSB), at *8-9 (S.D.N.Y. Sep. 29, 2017). "Hostile environment claims, however, are different in kind from discrete acts, as their very nature involves repeated conduct*." Davis-Garett, 921 F.3d at 42 (quoting Morgan, 536 U.S. at 115)*.As a result, a "charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id.

intent." *Roman-Malone v. City of New York, No. 11 Civ. 8560(PAC), 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).*

For the third element, "a Plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega, 801 F.3d at 85 (quoting Galabya v. N.Y.C. Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).* "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. *(quoting Terry, 336 F.3d at 138)."* Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. *(quoting Terry, 336 F.3d at 138).* The Second Circuit has held that "the assignment of 'a disproportionately heavy workload' can constitute an adverse employment action." Id. *(quoting Feingold v. New York, 366 F.3d 138, 152-53 (2d Cir. 2004)).*

For the fourth element, an inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the Plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the Plaintiff's discharge.'" *Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)).* To establish disparate treatment, a Plaintiff must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).*

"Ordinarily, the question whether . . . employees are similarly situated is a question of fact for the jury." *Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)*.

Critically, to survive a motion to dismiss , a Plaintiff need "not plead a *prima facie* case of discrimination," *Swierkiewicz, 534 U.S. at 515*, but a Plaintiff "must plead enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone, 2013 WL 3835117, at *4*. "Absent direct evidence of discrimination, what must be plausibly supported by facts alleged . . . is that the Plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn, 795 F.3d at 311*.

The ADEA makes it unlawful for an employer to 'discriminate against the individual with respect to his or her compensation, terms,  conditions, or privileges of employment, because of such individual's age." *Davis-Garett, 921 F.3d at 41 (quoting 29 U.S.C. §§ 623(a)(1), 631(a))*.In order to establish a *prima facie* case of age discrimination in violation of the ADEA , a Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Friedman v. Swiss Re Am. Holding Corp., 643 F. App'x 69, 71 (2d Cir. 2016)*. At the motion to dismiss stage, a Plaintiff need not demonstrate every element of the *prima facie case* of age discrimination , but he must "plausibly plead . . . that the circumstances surrounding an adverse employment action give rise to an inference of age discrimination ." *McManamon v. Shinseki, No. 11 Civ. 7610, 2013 WL 3466863, at *6 (S.D.N.Y. July 10, 2013).* [2]

---

[2]Individual employees cannot be held liable for violations of the ADEA. *Martin v. Chem. Bank*, 129 F.3d 114, at *3 (2d Cir. 1997) (holding that individual supervisors are not liable under ADEA) (unpublished); *Ivanov v. N.Y. City Transit Auth.*, No. 13 Civ. 4280, 2014 WL

However, it is an open question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action, especially in the absence of an ADEA cause of action, see, *e.g., Piccone v. Town of Webster, 511 F. App'x 63, 63 n.1 (2d Cir. 2013) (summary order)* ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983 ."); *Shein, 2016 WL 676458, at \*6 n.3* (collecting cases). With no clear guidance from the Second Circuit, most district courts decline to resolve this legal issue against Plaintiffs, find that Plaintiffs have alleged colorable age discrimination claims under Section 1983 when they plausibly facts in support of such claims. *Kunik v. N.Y.C. Dep't of Educ., 436 F. Supp. 3d 684, 692 (S.D.N.Y. 2020).*

To make out a hostile work environment claim, the change must be more than "mere inconvenience or an alteration of job responsibilities." *Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 204 (2d Cir. 2006)* (citation omitted). "A change in duties or job reassignment may be an adverse employment action, if it results in a change in responsibilities so significant as to constitute a setback to the Plaintiff's career." *Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 211(E.D.N.Y. 2013).* "[A] work environment may be actionable if the conduct there is *either* so severe *or* so pervasive as to alter the working conditions of a reasonable employee." *Terry, 336 F.3d at 149* (discussing hostile work environment claims under Title VII and ADEA, noting that the "same standards [of hostile work environment brought under Title VII] apply to hostile work environment claims brought under the ADEA "). Second, he must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer. *Feingold v. New York, 366 F.3d 138, 150 (2d Cir.*

---

2600230, at \*5 (S.D.N.Y. June 5, 2014) (holding that individual supervisors are not liable under ADA).*Rosen v. N.Y.C. Dep't of Educ.*, 18 Civ. 6670 (AT), at \*9-10 (S.D.N.Y. Aug. 27, 2019).

2004); *Terry*, 336 F.3d at 148 n.20. As well, Hostile work environment claims under Section 1983 are available, and are analyzed using the same standard applied to Title VII and ADEA hostile work environment claims. *See Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 988 n.5 (S.D.N.Y. 2017).*

A Plaintiff may satisfy the "policy or custom" prong under Section 1983 in one of four ways: by alleging the existence of 1) a formal policy, *see Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978*) ; 2) actions taken or decisions made by final municipal policymakers that caused the violation of Plaintiff's rights, *see Pembaur v. City of Cincinnati , 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (19860; 3*) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell , 436 U.S. at 690-91, 98 S.Ct. 2018* ; or 4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris , 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ; see also Moray v. City of Yonkers , 924 F.Supp. 8, 12 (S.D.N.Y. 1996)*. Furthermore, "it is not enough for a § 1983 Plaintiff merely to identify conduct properly attributable to the municipality. The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown , 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)*.

Here, defendants are state actors and as alleged in the Amended Complaint, mistreated Plaintiff in their individual capacities and on behalf of the School District pursuant to the School District's practices, customs and policies. Indeed, the Amended Complaint plausibly alleges that Plaintiff has been subjected to discriminatory and hostile background since 1999,  and that

Plaintiff's internal complaints have mostly fallen on deaf ears, thereby suggesting municipal imprimatur.

The Amended Complaint plausibly alleges that Plaintiff was well-qualified for his position, having worked for the School District as an Accountant I since September 8, 1999. (Amended Complaint, Paragraph "1"). Plaintiff was promoted to Accountant II in 2003. (Amended Complaint, Paragraph "14"). Plaintiff's performance as an Accountant II has been fully satisfactory at all relevant times, and in all positions that he has served in, as made plain by all of his performance evaluations. (Amended Complaint, Paragraph "15"). Further, the Amended Complaint plausibly alleges that he is protected classes as he is 63 years old and he has been the second oldest employee in Defendants' business office at all relevant times. (Amended Complaint, Paragraph "16"). Plaintiff has been so employed for the previous 21 years. (Amended Complaint, Paragraph "17").

Further, Plaintiff's alleged backgrounds facts suggesting that his mistreatment and his being subjected to a hostile work environment was based, in part upon his age. Indeed beginning in 2002 and continuing into 2014, an Assistant Superintendent for Business pervasively told Plaintiff that he was haughty; that he could not go to professional development training classes because Plaintiff himself could "teach" such classes; and sarcastically pervasively referred to Plaintiff as "the King," for no justifiable reason, other than Plaintiff's vast experience and by inference, his age. (Amended Complaint, Paragraph "26") (Amended Complaint, Paragraph "28"). These were not stray comments, since they came from one of Plaintiff's supervisors.

In April 2015, Rosa Sira, an external candidate who is white, American-born, and about 12 -13 years younger than Plaintiff, was hired to replace another employee for a higher paying

Treasurer position that Plaintiff was qualified for. (Amended Complaint, Paragraph "40"). As per Defendants' practice, policy and custom, Plaintiff was neither interviewed nor considered for the higher-paying Treasurer position. (Amended Complaint, Paragraph "41"). Upon information and belief and as background, Plaintiff was not considered for the position, despite his superior qualifications, in part, because of his age. Donna Dowen, a white, American-born female who is about 7 – 8 years younger than Plaintiff and who was unable to pass an Accountant I test, was also eventually hired in 2015, to the higher-paying Deputy Treasurer position. (Amended Complaint, Paragraph "43"). Donna Dowen's appointment was unannounced, and Plaintiff learned of her appointment by happenstance when Plaintiff noticed that she had begun to signing documents as "Deputy Treasurer," and others began to treat her as Plaintiff's boss. (Amended Complaint, Paragraph "44").

Upon information and belief and as background, Plaintiff was not considered for the position, despite his superior qualifications, because of his age. (Amended Complaint, Paragraph "45").This patten of not issuing vacancy announcements,  and not considering or interviewing Plaintiff for positions that he was qualified for, is strong circumstantial evidence of a discriminatory background. (Amended Complaint, Paragraph "46").

In April 2018, Plaintiff noticed that unlike everybody else in the Defendants' business office – all of whom were mostly younger than Plaintiff – that he was not being paid for the considerable overtime that he had been performing.  In fact, Rose Sira. Plaintiff's supervisor, discriminatorily approved everybody else's claimed overtime, except Plaintiff's overtime, and told Plaintiff to "get out" of her office when he sop complained. (Amended Complaint, Paragraph "49"). Plaintiff thereafter escalated his complaint to Micheal Senno and to Eric Baird, but not before becoming so distraught, that defendants' nurse called an ambulance and Plaintiff

was rushed to Good Samaritan Hospital in Suffern, New York, for dangerously elevated blood pressure. (Amended Complaint, Paragraph "50"). While this complaint was eventually resolved, Plaintiff was thereafter subjected to a spate of micro-aggressions after his complaint. (Amended Complaint, Paragraph "51"). Indeed, from beginning from late April 2018, after he complained about not receiving appropriate overtime as compared to white, American-born, and mostly younger employees. (Amended Complaint, Paragraph "52"),

Thereafter, Plaintiff found himself embroiled in an increasingly hostile work environment that is based, in part, upon his age, as evidenced by the aforementioned age-discriminatory background. Plaintiff has been subjected to hostilities which are still ongoing in nature, including having obligatory meetings with Defendants Mike Senno over false inter-personnel issues and false counseling memos that Defendants Senno has placed in his Plaintiff's personnel file over claims of insubordination due to professional disagreements with Defendants Rose Sira and Mike Senno on well-settled accountancy principles and matters. Such hostilities have continued in a pervasive manner, and on December 12, 2019, Plaintiff filed a formal complaint with the Rockland County Human Rights Commission and the United States Equal Employment Opportunity Commission, alleging age discrimination amongst other discrimination theories. (Amended Complaint, Paragraph "84"). As will shown further, Plaintiff has been subjected to a pervasive regimen of hostilities which is also explainable, in part, by reference to the aforementioned age-discriminatory background. Plaintiff's claims of age discrimination, both under the ADEA and under Section 1983 are plausibly alleged and are actionable. Defendants' request to dismiss Plaintiff's age discrimination claims, without the benefit of any discovery should be denied.

**POINT II**

10

## THE AMENDED COMPLAINT PLAUSIBLY ALLEGES CLAIMS FOR RACE, NATIONAL ORIGIN, PRIOR ALIENAGE AND HOSTILE WORK ENVIRONMENT UNDER SECTION 1983, SECTION 1981[3] AS ENFORCED AND SECURED BY SECTION 1983, AND SECTION 2000e

Defendants also argue that Plaintiff has failed to make out race discrimination claims, and that he is barred from filing Section 1981 claims as secured by Section 1983. These arguments are also without merit.

As an initial matter, Plaintiff recognizes that when defendants are state actors, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981. *Anderson v. N.Y.C. Dep't of Fin., No. 19-CV-7971 (RA), at \*6 (S.D.N.Y. Apr. 21, 2020).* However, the Second Circuit recently observed that, "we note that a Plaintiff may not sue a municipal defendant under section 1981 *alone,* and instead must raise any section 1981 claims through a section 1983 action." (Emphasis supplied). *See Quinones v. City of Binghamton, No. 20-3078 at \*14 n.4 (2d Cir. May 12, 2021).*This language stands for the proposition that Section 1981 claims are available against state actors, so long as they are raised, as in the instant case, through Section 1983 claims. Moreover, the Amended Complaint in the instant case has alleged that the "challenged acts were performed pursuant to a municipal policy or custom," as required to maintain a Section1983 action against a municipality. " *Duplan v. City of N.Y., 888 F.3d 612, 621 (2d Cir. 2018).*

In any event, to make a *prima facie* case of racial discrimination, a Plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she

---

[3]Section 1981 claims are governed by a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co., 542 U.S. 369, 382 (2004)* (holding that if a Plaintiff's claim was "made possible by" post-1990 amendments to § 1981, the claim should be subject to the federal four-year statute of limitations). *Spence v. Bukofzer, 15 Civ. 6167 (ER), at \*10 (S.D.N.Y. Mar. 30, 2017).*

suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83(2d Cir. 2015).* At the initial pleading stage, "[t]he facts . . . in the Amended Complaint need not give plausible support to the ultimate question of whether the employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).*Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), at *11 (S.D.N.Y. Apr. 21, 2020).

To state a claim under the Fourteenth Amendment Equal Protection Clause [of the Constitution of the United States] and/or Section 1981, [P]laintiffs must sufficiently allege that [the Proposed D]efendants acted with discriminatory intent." *Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 68 (2d Cir. 2015) (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) )*. "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences; it involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal, 556 U.S. at 663, 129 S.Ct. 1937*. To withstand "a motion to dismiss , the Plaintiff[s] must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994) (citation omitted); see also Andrews v. Fremantlemedia, N.A., Inc., 613 Fed. App'x 67, 69 (2d Cir. 2015)*.

Section 1981 and Title VII have also been interpreted to provide a cause of action for employment discrimination based on a hostile work environment . *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981); Patterson v. Cty. of*

*Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) (Title VII)* . However, hostile work environment claims are not analyzed using the *McDonnell Douglas three-part burden-shifting test*. *See Grant v. United Cerebral Palsy of N.Y. City, Inc., No. 11 Civ. 00018 (LGS), 2014 WL 902638, at \*8 (S.D.N.Y. Mar. 7, 2014).* Instead, to establish a claim for hostile work environment , a Plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Terry v. Ashcroft, 336 F.3d 128, 147-148 (2d Cir. 2003) (quoting Alfano v. Costello, 294 F.3d  365, 373(2d Cir. 2002)); see also Whidbee, 223 F.3d at 69* (noting hostile work environment claims are analyzed under the same standards for both § 1981 and Title VII claims).

A Plaintiff establishes a claim for national origin discrimination under Title VII by demonstrating that "national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *42 U.S.C. § 2000e-2(m).* To establish a prima facie claim for such discrimination, a Plaintiff must demonstrate that he (1) is within the protected class; (2) was qualified for his employment position; (3) was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir.2011). Plaintiffs must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega*, 801 F.3d at 85 (quoting *Littlejohn v. New York*, 795 F.3d 297, 310 (2d Cir. 2015)) (internal quotation marks omitted). While "a discrimination Amended Complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss , [ ] it must nevertheless comply with the plausibility standard set forth in *Twombly* and *Iqbal*." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 21-22 (2d Cir. 2015)

(quoting *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)); *Yazurlo v. Bd. of Educ. of Yonkers*, No. 17 Civ. 2027 (NSR), at \*10-11 (S.D.N.Y. Sep. 24, 2018).

      Separately, Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). The statute, as amended by the Civil Rights Act of 1991, prohibits both public and private actors from discriminating on the basis of race or alienage in the making and enforcement of contracts, including employment contracts. *See Anderson v. Conboy,156 F.3d 167, 170, 180 (2d Cir.1998)* (observing that § 1981's "juxtaposition of 'persons' and 'citizens' suggests that it prohibits alienage discrimination"); see also 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States"). "Alienage discrimination is distinct from both national-origin and birthplace discrimination." *Anderson, 156 F.3d at 171 n. 5.*

      To state such a claim under Section 1981, a Plaintiff must allege that (1) he or she is a member of a protected class, (2) the defendant intentionally discriminated against him or her on the basis of membership in that protected class; and (3) the discrimination concerned one of § 1981's enumerated activities. *See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir.2000) (citation omitted). "[Section ] 1981 , like the Equal Protection Clause, can be violated only by purposeful discrimination." Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835(1982).* Purposeful discrimination is "conduct motivated by a discriminatory purpose," rather than conduct that "merely result[s] in a disproportionate impact on a particular class." *Id. at 386, 102 S.Ct. 3141 ; see also id. at 388, 102 S.Ct. 3141.*

      Finally, one of the elements of a hostile work environment claim is conduct that creates a hostile or abusive environment "because of [the] employee's protected characteristic, such as race

or national origin," although the protected characteristic need not be "the only motivating factor." *Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20, 23 (2d Cir. 2014)*. With respect to discriminatory intent, at the initial pleading stage, "[t]he facts required by *Iqbal* to be alleged in the Amended Complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn, 795 F.3d at 311. Hernandez v. N.Y.C. Dep't of Sanitation, 18 Civ. 1808 (LGS), at \*5 (S.D.N.Y. Oct. 29, 2018)*.

Here, the Amended Complaint plausibly alleges that Plaintiff is the only black person in Defendants' business office, and he had been the only person who is not American born, at all relevant times up and until August of 2019. (Amended Complaint, Paragraph "18"). Further, Plaintiff has a strong French/Haitian accent. (Amended Complaint, Paragraph "19"). Further, defendants Michael Senno and Rosa Sira, have frequently and <u>falsely</u> claimed to not understand Plaintiff, because of his accent. (Amended Complaint, Paragraph "20"). Both defendants, Senno and Sira, have typically done this when Plaintiff was disputing some issue, and both defendants, were trying to avoid any accountability. (Amended Complaint, Paragraph "21"). Individual defendants have done this, pervasively, since May 2015, when Rose Sira joined the District and became Plaintiff's supervisor. (Amended Complaint, Paragraph "22"). All of the Defendants have been engaged in a continuing violation and an uninterrupted pattern of discrimination against his race, his national origin and his prior alienage (Amended Complaint, Paragraph "23").

*Background of Discrimination based upon Race and National Origin and Prior Alienage[4]*

In 2002, James B. Johnston, who is white and American-born, without any non-American accent, was hired as a higher-paying Assistant Superintendent for Business. (Amended Complaint, Paragraph "25"). Upon his hire, Johnston immediately began subjecting Plaintiff to micro-aggressions that were pervasive between 2002 and 2014, such as, for example, pervasively telling Plaintiff that Plaintiff asked too many questions and that he was haughty. Moreover, Johnson sarcastically referred to Plaintiff as "King" because Plaintiff is a competent black professional, and because Plaintiff's experience was far in excess of that of other employees. (Amended Complaint, Paragraph "27"). However, Johnson would not have sarcastically begun to call Plaintiff "King" but for his race. (Amended Complaint, Paragraph "28"). Moreover, upon information and belief, Johnston was unaccustomed to Black professionals, and Black professionals disagreeing with him on well-settled accountancy principles. (Amended Complaint, Paragraph "29").

On or about March 8, 2010, Johnston and the School District created a higher-paying, but interim district treasurer position, and hired Mike Senno, a white man who is American-born. (Amended Complaint, Paragraph "30"). There were no vacancy announcements, and Plaintiff was neither interviewed nor considered for the position, despite his superior qualifications as an Accountant II.  (Amended Complaint, Paragraph "31"). In October 2010, Senno was appointed to a newly-created and higher paying Business Administrator position, without a vacancy announcement. (Amended Complaint, Paragraph "32"). Plaintiff was neither interviewed nor considered for the position, though he would have been interested in such a position, because of

---

[4] Defendants' prior conduct, even if not actionable, is admissible under FRE 404(b).

his superior qualifications as an Accountant II. (Amended Complaint, Paragraph "33"). Upon information and belief, and as background, Plaintiff was not considered for the position, despite his superior qualifications, race and his national origin and prior alienage. (Amended Complaint, Paragraph "34").

In 2014, Senno took over James Johnston's higher-paying Assistant Superintendent for Business position without any vacancy announcement. Plaintiff was neither interviewed nor considered for the position despite his superior qualifications as an Accountant II. (Amended Complaint, Paragraph "35"). Upon information and belief and as background, Plaintiff was not considered for the position, despite his superior qualifications, because of his race and his national origin and prior alienage, characterized, in part, by his strong French/Haitian accent. (Amended Complaint, Paragraph "36").

In July 2014, a competitive and higher-paying position of Supervisor of Fiscal Services/Treasurer became available. (Amended Complaint, Paragraph "37"). Typically, Accountant II's are hired to fill this position. (Amended Complaint, Paragraph "38"). Plaintiff was the only Accountant II in Defendants' business office at the time, but rather than interviewing Plaintiff and considering Plaintiff for this competitive position,  Johnston created a non-competitive position for "Treasurer" and hired an external candidate, Michael Ivanoff, who is white and American-born. But, within less than a year, Ivanoff told Plaintiff that he was asked to resign, and did, in fact, later resign. (Amended Complaint, Paragraph "39"). In April 2015, Rosa Sira, an external candidate who is white and American-born, was hired to replace Ivanoff for the higher paying Treasurer position. (Amended Complaint, Paragraph "40"). As per Defendants' practice, policy and custom, Plaintiff was neither interviewed nor considered for the higher-paying Treasurer position. (Amended Complaint, Paragraph "41"). Upon information and

belief, and as background, Plaintiff was not considered for the position, despite his superior qualifications, because of his race and his national origin and prior alienage. (Amended Complaint, Paragraph "42"). Donna Dowen, a white, American-born female and who was unable to pass an Accountant I test, was also eventually hired in 2015, to the higher-paying Deputy Treasurer position. (Amended Complaint, Paragraph "43"). Donna Dowen's appointment was unannounced, and Plaintiff learned of her appointment by happenstance when Plaintiff noticed that she had begun to signing documents as "Deputy Treasurer," and others began to treat her as his boss. (Amended Complaint, Paragraph "44").

Upon information and belief and as background, Plaintiff was not considered for the position, despite his superior qualifications, because of his race and his national origin and prior alienage. (Amended Complaint, Paragraph "45"). This patten of not issuing vacancy announcements,  and not considering or interviewing Plaintiff for positions that he was qualified for, is strong circumstantial evidence of a discriminatory background. (Amended Complaint, Paragraph "46").

In April 2018, noticed that unlike everybody else in the Defendants' business office – all of whom were white, American-born -- that he was not being paid for the considerable overtime that he had been performing. (Amended Complaint, Paragraph "47"). Rose Sira discriminatorily approved everybody else's claimed overtime, except Plaintiff's overtime, and told Plaintiff to "get out" of her office when he complained. (Amended Complaint, Paragraph "49"). Plaintiff thereafter escalated his complaint to Micheal Senno and to Eric Baird, but not before becoming so distraught, that defendants' nurse called an ambulance and Plaintiff was rushed to Good Samaritan Hospital in Suffern, New York, for dangerously elevated blood pressure. (Amended Complaint, Paragraph "50").

Plaintiff has been subjected to hostilities which are still ongoing in nature, including:
Defendant Rose Sira, one of Plaintiff's supervisors, continuing to mock Plaintiff's accent by way
of facial gestures and shaking of her head, and claiming to not understand him; having obligatory
meetings with Defendants Mike Senno over false inter-personnel issues and false counseling
memos that Defendants Senno has placed in his Plaintiff's personnel file over claims of
insubordination due to professional disagreements with Defendants Rose Sira and Mike Senno
on well-settled accountancy principles and matters;  being subjected, on February 11, 2019, to a
physical assault by Mike Senno, resulting in Plaintiff filing a formal complaint in early 2019
with the Board of Education. (Amended Complaint, Paragraph "53").

This spate of aggression – including a physical assault from one of Plaintiff's supervisors
-- created a hostile work environment that is pervasive and ongoing, and has occurred because of
Plaintiff's race, his national origin and his prior alienage. (Amended Complaint, Paragraph
"54"). In fact, Plaintiff formally complained in early April 2019, about being physically
assaulted by Mike Senno, to Eric Baird, the Assistant Superintendent for Human Resources.
(Amended Complaint, Paragraph "55"). Plaintiff also alleged in his complaint, that Senno's
assaultive behavior towards him was racially discriminatory. (Amended Complaint, Paragraph
"56"). Yet, at no point did Baird – a human resources professional --  or anybody else employed
directly or indirectly with Defendant School District, intervene or attempt to punish, or attempt
to correct, Senno's physical harassment and assaultive behavior against Plaintiff. (Amended
Complaint, Paragraph "57"). The defendants' failure to intervene or attempt to punish, or attempt
to correct, Senno's physical harassment and assault on Plaintiff's person, also contributed to the
hostile work environment that Plaintiff has had to endure in a pervasive manner. (Amended
Complaint, Paragraph "58"). In particular, this assault occurred after Senno summoned Plaintiff

to his office, where he and Senno had a heated exchange about his (Plaintiff's) accounting practices. (Amended Complaint, Paragraph "59"). Frustrated, Senno physically pushed Plaintiff out of his office. (Amended Complaint, Paragraph "60").

Senno has not physically pushed any similarly situated employees who were non-black out of his office, nor has he engaged in any similar assaultive misbehavior against any non-white employees or any employees at any time prior to February 2019. (Amended Complaint, Paragraph "61"). Moreover, Senno would not have engaged in any such assaultive behavior against any white employees. (Amended Complaint, Paragraph 62"). In late April 2019, Defendants – including Mike Senno and Defendants Baird – caused a negative  "counseling memo" to be placed in Plaintiff's personnel. (Amended Complaint, Paragraph "63"). The counseling memo falsely claimed that Plaintiff had acted inappropriately and unprofessionally in complaining about Senno's misbehavior because he (Plaintiff) had been too upset, loud and unprofessional when complaining about Senno's misbehavior. (Amended Complaint, Paragraph "64"). This too contributed to an ongoing hostile work environment. (Amended Complaint, Paragraph "65").

Not satisfied with placing a counseling memo in Plaintiff's personnel file, Defendants went to absurd lengths in further creating a further hostile work environment (Amended Complaint, Paragraph "66"). Indeed, on May 10, 2019, a law firm hired by defendant School District, wrote directly to Plaintiff, claiming that it had been retained to "investigate" Plaintiff's racial discrimination and assault complaint against Mike Senno. (Amended Complaint, Paragraph "67").

*Cover-up and failure to properly investigate*

On May 10, 2019, the law firm wrote to Plaintiff, in a perfunctory and conclusory three-paged letter, claiming to not have found any evidence of assaultive or discriminatory behavior on Senno's part because: (1) it somehow could not be believed that any heated discussion took place between Senno and Plaintiff allegedly because Plaintiff had not previously reported Senno's behavior to anybody (contradicting the counseling memo placed in Plaintiff's personnel file); (2) because Plaintiff "waited" 60 days before complaining, even though the deadline, to the extent any such deadlines even existed, would have been between 180 and 300 days under EEO guidelines; and (3) that the assault, as Plaintiff described, did not constitute discrimination, and thus, was somehow inappropriate for the purpose of his investigation, even if the alleged assault did occur. (Amended Complaint, Paragraph "70"). This perfunctory letter to Plaintiff also contributed to the ongoing hostile work environment that he is still having to endure. (Amended Complaint, Paragraph "71").

The law firm letter is so lopsided and defensive of Defendant School District and Defendant Mike Senno, that it cannot be taken seriously on any level. (Amended Complaint, Paragraph "72"). The tenor, tone and perfunctory nature of the 3-page letter makes it plain that its author was more interested in maintaining his law firm's $7500 a month and capless $200 an hour relationship with Defendant School District than he was with ferreting out any injustice. (Amended Complaint, Paragraph "73"). Nowhere in the letter is there any evidence that Mike Senno was asked if he had ever assaulted any non-black staff members as Plaintiff complained of in his Amended Complaint. (Amended Complaint, Paragraph "74"). This ridiculously lopsided law firm letter did, in fact, contribute the ongoing hostile work environment that Plaintiff has to endure. (Amended Complaint, Paragraph "75").

In March 2020, defendant School District made a decision that all essential staff work would be done from employee's homes, and that all essential staff would be given lap-tops to work from their homes. (Amended Complaint, Paragraph "86"). Plaintiff was not given a laptop to work from home, even though he was the only  accountant so employed with district at the time. (Amended Complaint, Paragraph "87"). When Plaintiff asked Rose Sira why he was not assigned a laptop, Sira told him, threateningly, to "…talk to the boss." (Amended Complaint, Paragraph "88"). Upon information and belief, Sira was referring to the School District Superintendent, Ileana Eckert. (Amended Complaint, Paragraph "89"). Eckert never told Plaintiff why he did not get a laptop, despite his reasonable query. (Amended Complaint, Paragraph "90"). Plaintiff was unable to get his work done without a laptop. (Amended Complaint, Paragraph "91").

However, in late March 2020, Plaintiff received an email from Michael Senno saying that there was a laptop available for Plaintiff to "pick up." (Amended Complaint, Paragraph "92"). Mike Senno delivered the laptop to Plaintiff's home on or about March 27, 2020. (Amended Complaint, Paragraph "93"). Thereafter Plaintiff endeavored to catch up by working, during uncompensated overtime, on work he had fallen behind on when he had been without a laptop. (Amended Complaint, Paragraph "94"). Yet, on June 23, 2020, Mike Senno sent Plaintiff an email accusing Plaintiff of being "unprofessional" and "insubordinate" merely because Plaintiff asked Senno during a meeting to not forget to tell MIS to put him in a repair queue because his assigned laptop was not working.  (Amended Complaint, Paragraph "95").There was nothing unprofessional or insubordinate about Plaintiff's reasonable request. (Amended Complaint, Paragraph "96"). Plaintiff's not having a laptop to work at home, unlike everybody else in the business office, and Plaintiff's having to advocate for one, also contributed to a pervasive and

ongoing hostile work environment, based, in part, upon Plaintiff's race, national origin and prior alienage. (Amended Complaint, Paragraph "97").

Plaintiff's problems with defendant School District reached a crescendo in October of 2020, when Plaintiff was forced into an emergency psychiatric leave of absence due to anxiety and depression, both of which were proximately caused by Defendants' pervasive and ongoing micro-management and harassment campaigns against Plaintiff, leading to a hostile work environment. (Amended Complaint, Paragraph "105").

Plaintiff is still under mental health care and leave due to anxiety and depression, both of which have been proximately caused by the hostile work environment that defendants created. (Amended Complaint, Paragraph "111"). Plaintiff has suffered humiliation and extreme mental anguish as a proximate result of Defendants' acts and omissions, including having to treat with mental healthcare professionals and being prescribed psychotropic medications to treat anxiety and depression, ailments that were proximately caused by Defendants' actions. (Amended Complaint, Paragraph "115"). Plaintiff has never had to treat with a mental healthcare professional for anxiety or depression, or anything else before. (Amended Complaint, Paragraph "116"). Plaintiff has never been prescribed a psychotropic medication before. (Amended Complaint, Paragraph "117").

**POINT III**

**THE AMENED COMPLAINT PLAUSIBLY ALLEGES RETALIATION AND HOSTILE WORK ENVIRONMENT UNDER SECTION 1983, SECTION 1981 AS SECURED AND ENFORCED BY SECTION 1983, SECTION 2000e, AND THE ADEA**

Surprisingly, defendants have also moved to dismiss Plaintiff's retaliation claims. Defendants' arguments are actually frivolous.

To establish a prima facie case of retaliation under Title VII  and the ADEA an employee must show (1) participation in a protected activity known to the defendant(s); (2) an employment action disadvantaging the Plaintiff; and (3) a causal connection between the protected  activity and the adverse employment action. *Sotomayor v. City of N.Y., 862 F.Supp.2d 226, 261 (E.D.N.Y. 2012).* To state a retaliation claim based on an equal protection violation under § 1983, "[a] Plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against [her], (3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015).* An adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).* For an adverse retaliatory action to be causally connected to a Amended Complaint, Plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action" or "that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015).*

Here, the Amended Complaint plausibly alleges numerous instances of protected activity and cumulative adverse employment actions, including an emergency room visit and being prescribed, for the first time in Plaintiff's life, psychotropic medication due the retaliatory and hostile work environment that Plaintiff has had to endure.

In April 2018, Plaintiff made an oral, but formal complaint, to Rose Sira (supervisor), Michael Senno (supervisor) and Eric Baird (human resources), that unlike everybody else in the Defendants' business office – all of whom were white, American-born, and mostly younger than Plaintiff – that he was not being paid for the considerable overtime that he had been performing.

(Amended Complaint, Paragraph "47"). This was essentially a discrimination complaint, and thus, Plaintiff was engaged in protected activity. (Amended Complaint, Paragraph "48").

### _Adverse actions and interference with performance of duties_

Rose Sira discriminatorily approved everybody else's claimed overtime, except Plaintiff's overtime, and told Plaintiff to "get out" of her office when he complained to her directly. (Amended Complaint, Paragraph "49"). Plaintiff thereafter escalated his complaint to Micheal Senno and to Eric Baird, but not before becoming so distraught, that defendants' nurse called an ambulance and Plaintiff was rushed to Good Samaritan Hospital in Suffern, New York, for dangerously elevated blood pressure. (Amended Complaint, Paragraph "50"). While this complaint was eventually resolved, Plaintiff was thereafter subjected to a spate of micro-aggressions after his complaint. (Amended Complaint, Paragraph "51"). Indeed, from beginning from late April 2018, after he complained about not receiving appropriate overtime as compared to white, American-born, and mostly younger employees. (Amended Complaint, Paragraph "52"),

### _Ongoing hostile and retaliatory acts_

Plaintiff formally complained in early April 2019, about being physically assaulted by Mike Senno, to Eric Baird, the Assistant Superintendent for Human Resources. (Amended Complaint, Paragraph "55"). Plaintiff also alleged in his complaint, that Senno's assaultive behavior towards him was racially discriminatory. (Amended Complaint, Paragraph "56"). Yet, at no point did Baird, a human resources professional,  or anybody else employed directly or indirectly with Defendant School District, intervene or attempt to punish, or attempt to correct, Senno's physical harassment and assaultive behavior against Plaintiff. (Amended Complaint,

Paragraph "57"). The defendants' failure to intervene or attempt to punish, or attempt to correct, Senno's physical harassment and assault on Plaintiff's person, also contributed to the hostile work environment that Plaintiff has had to endure in a pervasive manner. (Amended Complaint, Paragraph "58").

In late April 2019, Defendants – including Mike Senno and Defendants Baird – caused a negative "counseling memo" to be placed in Plaintiff's personnel file that certainly would dissuade other employees from making similar complaints about physically assaultive and racially discriminatory behavior. (Amended Complaint, Paragraph "63").The counseling memo falsely claimed that Plaintiff had somehow acted inappropriately and unprofessionally in complaining about Senno's misbehavior because he (Plaintiff) had been too upset, loud and unprofessional when complaining about Senno's misbehavior. (Amended Complaint, Paragraph "64"). This counseling memo, upon information and belief, was designed to dissuade Plaintiff from making other complaints and to build a paper-trail for his eventual separation from service. This too contributed to an ongoing hostile work environment. (Amended Complaint, Paragraph "65").

### _Additional Acts of Retaliation_

On October 16, 2019, Defendants, through Rose Sira, began a pattern, which became pervasive, and continuing into early October of 2020, of intentionally accusing Plaintiff of failing to do tasks that she knew, or had reason to know, he had already performed, or in other instances, of falsely accusing Plaintiff of failing to do tasks that she knew, or reasonably should have known, were _not_ within Plaintiff's work purview. This too contributed to the ongoing hostile work environment that Plaintiff must endure, and that is pervasive. (Amended Complaint, Paragraph "77").

Specifically, Plaintiff had already done ST-3 reports on his own, without help or prodding. (Amended Complaint, Paragraph "78"). Yet, on or about October 16, 2019, Rose Sira instructed Plaintiff to conduct ST-3 accounting reports, which she knew or had reason to know that Plaintiff had already completed. (Amended Complaint, Paragraph "79"). Sira then went into an unnecessary rant about Plaintiff refusing to follow her instructions. (Amended Complaint, Paragraph "80").

On October 30, 2019 Sira sent an email to Plaintiff summoning Plaintiff to meeting with his union representative to discuss his alleged "insubordination." (Amended Complaint, Paragraph "81"). Plaintiff and his union representatives, and defendant Eric Baird, on November 14, 2019 met about Plaintiff's alleged "insubordination." (Amended Complaint, Paragraph "82"). In the end, Sira was forced to withdraw her "insubordination" charge against Plaintiff, but not before causing Plaintiff to endure additional hostilities in the workplace. (Amended Complaint, Paragraph "83").

On December 12, 2019, Plaintiff filed a formal complaint with the Rockland County Human Rights Commission and the United States Equal Employment Opportunity Commission, alleging age discrimination, race discrimination, national origin discrimination, retaliation. (Amended Complaint, Paragraph "84").

*More Retaliatory Acts*

All defendants thereafter exhibited a pattern of email abuse, shrill disagreements, and harassment concerning Plaintiff's work purview, all designed to create a paper trail for later use in justifying Plaintiff's likely separation from his 21 years' worth of service to Defendants, and thus, further contributing to the hostile work environment that Plaintiff is having to endure. (Amended Complaint, Paragraph "85").

For example, in March 2020, defendant School District made a decision that all essential staff work would be done from employee's homes, and that all essential staff would be given lap tops to work from their homes. (Amended Complaint, Paragraph "86"). Plaintiff was not given a laptop to work from home, even though he was the only  accountant so employed with district at the time. (Amended Complaint, Paragraph "87"). When Plaintiff asked Rose Sira why he was not assigned a laptop, Sira told him, threateningly, to "…talk to the boss." (Amended Complaint, Paragraph "88"). Plaintiff was unable to get his work done without a laptop. (Amended Complaint, Paragraph "91").

However, in late March 2020, Plaintiff received an email from Michael Senno saying that there was a laptop available for Plaintiff to "pick up." (Amended Complaint, Paragraph "92"). Mike Senno delivered the laptop to Plaintiff's home on or about March 27, 2020. (Amended Complaint, Paragraph "93"). Thereafter Plaintiff endeavored to catch up by working, during uncompensated overtime, on work he had fallen behind on when he had been without a laptop. (Amended Complaint, Paragraph "94"). Yet, on June 23, 2020, Mike Senno sent Plaintiff an email accusing Plaintiff of being "unprofessional" and "insubordinate" merely because Plaintiff asked Senno during a meeting to not forget to tell MIS to put him in a repair queue because his assigned laptop was not working.  (Amended Complaint, Paragraph "95"). There was nothing unprofessional or insubordinate about Plaintiff's reasonable request. (Amended Complaint, Paragraph "96"). Plaintiff's not having a laptop to work at home, unlike everybody else in the business office, and Plaintiff's having to advocate for one, also contributed to a pervasive and ongoing hostile work environment. (Amended Complaint, Paragraph "97").

*Adverse Action and penultimate interference with work*

Plaintiff's problems with defendant School District reached a crescendo in October of 2020, when Plaintiff was forced into an emergency psychiatric leave of absence due to anxiety and depression, both of which were proximately caused by Defendants' pervasive and ongoing micro-management, harassment campaigns against Plaintiff leading to a hostile work environment. (Amended Complaint, Paragraph "105").

Plaintiff is still under the care of a mental health professional and is still on leave due to anxiety and depression, both of which have been proximately caused by the hostile work environment that defendants created. (Amended Complaint, Paragraph "111"). The Court should deny defendants request to dismiss Plaintiffs' retaliation and hostile work environment claims.

**POINT IV**

**THE AMENDED COMPLAINT PLAINTIFF PLAUSIBLY ALLEGES FMLA INTERFERNCE**

Plaintiff sought to take an FMLA leave of absence, but defendants refused to grant him that peace of mind.

In an FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Id.* To state an interference claim under 29 U.S.C. § 2615(a)(1), a Plaintiff must adequately plead: (1) that he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA. *See Geromanos,322 F. Supp. 2d at 427.Smith v. Westchester County, No. 09-CV-5866 (KMK), at \*19-20 (S.D.N.Y. Feb. 14, 2011).*

It is well-settled that an FMLA interference claim could arise where an employer refused to authorize FMLA leave, discouraged an employee from using such leave, or discriminated

against an employee who has used such leave." *Adams v. Northstar Location Services, LLC, 09-CV-1063-JTC, at \*12 (W.D.N.Y. Oct. 5, 2010)(citing Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004)).*

Here, when Plaintiff sought to take an FMLA leave of absence, Defendants sought to make it difficult for him to do so and sought to make it difficult for him to quietly enjoy his leave. (Amended Complaint, Paragraph "106").

For example, on October 2, 2020 after Plaintiff sought to take a leave of absence under the FMLA, Mike Senno sent Plaintiff an email, explicitly and threateningly stating that he still wanted to speak with Plaintiff about the project he had requested a reasonable accommodation on when he got back. (Amended Complaint, Paragraph "107").

On October 14, 2020, Senno sent Plaintiff another harassing email asking him, generally, if he had any school district records at his home, and if so, he would send a courier to pick up those records. In the same email, he asked for the passwords for certain computer files that he believed Plaintiff had. (Amended Complaint, Paragraph "108"). Plaintiff responded that he did not physically have any school district records at home that he did recall any passwords, and that in any event, hard copies of all the material that he had been working on was carefully and transparently left in his desk hutch for the school district's review. (Amended Complaint, Paragraph "109"). This too contributed to the ongoing hostile work environment that is pervasive. (Amended Complaint, Paragraph "110").

Notably, Plaintiff is still under mental health care and leave due to anxiety and depression, both of which have been proximately caused by the hostile work environment that defendants created. (Amended Complaint, Paragraph "111").

## <u>CONCLUSION</u>[5]

For the foregoing reasons, Defendant's 12 (b)(6) Motion to Dismiss should be denied in

it's entirely.

Dated:          New York, New York
                July 5, 2021

                                    Respectfully submitted,

                                    _____x
                                    Ambrose Wotorson, Esq.
                                    Law Offices of Ambrose Wotorson
                                    225 Broadway, 41st Floor
                                    New York, New York 10007
                                    212-884-5985
                                    Loaww1650@aol.com

---

[5] Plaintiff hereby moves to withdraw the Rehabilitation Act claim without prejudice. However, qualified immunity is unavailable to the individual Defendants herein as prohibitions against discrimination, retaliation and the creation of hostile work environments in government employment are clearly established and well-settled. (Amended Complaint, Paragraph "112").