UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSWALD BONCOEUR,

                                        Plaintiff,

                v.

HAVERSTRAW-STONY POINT
CENTRAL SCHOOL DISTRICT *et al*.,

                                        Defendants.

No. 20-CV-10923 (KMK)

OPINION & ORDER

Appearances:

Ambrose Wotor Wotorson, Jr., Esq.
Ambrose Wotorson, P.C.
New York, NY
*Counsel for Plaintiff*[1]

Michael A. Miranda, Esq.
Maranda Sambursky Solne Sklarin Verveniotis LLP
Mineola, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Oswald Boncoeur ("Boncoeur" or "Plaintiff") brings this lawsuit, pursuant to 42 U.S.C. §

1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e (Title VII of the Civil Rights Act or "Title VII"), 29

U.S.C. § 621 *et seq*. (Age Discrimination Employment Act or "ADEA"), 29 U.S.C. § 2615(a)(1)

(Family and Medical Leave Act or "FMLA"), and 29 U.S.C. § 701 *et seq*. ("Rehabilitation Act"),

---

        [1] It is with condolences that the Court observes that Plaintiff's counsel, Mr. Wotorson,
passed away during the course of this litigation. Before Court is Defendants' Motion to Dismiss
the Amended Complaint (the "Motion"). (*See* Not. of Mot. (Dkt. No. 16).) The Motion was
fully briefed prior to Mr. Wotorson's passing. (*See* Dkt. Nos. 16–17, 23, 26–27.) Thus, the
Court will proceed with the adjudication of the Motion.

against Haverstraw-Stony Point Central School District (the "School District"), Michael Senno ("Senno"), Rose Sira ("Sira"), and Eric Baird ("Baird" and collectively, "Defendants"), alleging discrimination, hostile work environment, and retaliation on the basis of his age, race, national origin, prior alienage, and prior protected activities.  (*See generally* Am. Compl. (Dkt. No. 13).)

Before the Court is Defendants' Motion to Dismiss the Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 16).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.[2]  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff has worked for the School District for over 20 years as an accountant.  (Am. Compl. ¶ 5.)  Plaintiff has a Bachelor's degree in Business Administration with a concentration in Accounting and is an IRS enrolled agent.  (*Id.* ¶ 20.)  He was hired by the School District as an Accountant I on September 8, 1999.  (*Id.* ¶ 13.)  In 2003, Plaintiff was promoted to the position of Accountant II.  (*Id.* ¶ 14.)

Defendant Senno is the School District's Assistant Superintendent for Business.  ((*Id.* ¶¶ (*Id.* ¶ 8.)  Defendant Sira is the School District's Treasurer.  (*Id.* ¶ 19.)  Defendant Baird is the

---

[2] "It is well established that an amended complaint . . . supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).

School District's Assistant Superintendent for Human Resources and Community Relations.  (*Id.* ¶ 10.)  Senno and Sira are Plaintiff's supervisors.  (*Id.* ¶¶ 22, 54.)

Plaintiff alleges that he has been subjected to "a continuing violation and an uninterrupted pattern of discrimination against Plaintiff because of his age, his race, his national origin and his prior alienage and because of his protected activities."  (*Id.* ¶ 23.)  Plaintiff, who is 63 years old, alleges that he has been the second oldest employee for the entirety of his tenure at the School District.  (*Id.* ¶ 16.)  He has also been the only Black employee, and, up until August 2019, he was the only employee who was not born in the United States.  (*Id.* ¶¶ 16, 18.)  Although Plaintiff is fluent in English, he has a strong French/Haitian accent.  (*Id.* ¶ 19–20.)

Plaintiff alleges that James Johnston ("Johnston"), who was hired as the Assistant Superintendent for Business in 2002, sarcastically referred to Plaintiff as "King" because of his age and race.  (¶¶ 25–29.)  Plaintiff also alleges that he was overlooked for various promotions because of his age.  For example, in March 2010, the School District created an interim District Treasurer position and hired Senno, who is white and American-born, without posting any vacancy announcements or interviewing Plaintiff.  (*Id.* ¶¶ 30–31.)  Similarly, in October 2010, Senno was again promoted to a newly created Business Administrator position, without a vacancy announcement.  (*Id.* ¶ 32.)  Plaintiff alleges that he was neither interviewed nor considered, despite his qualifications and experience.  (*Id.* ¶¶ 33–34.)  Additionally, in 2014, Senno took over Johnston's position as Assistant Superintendent for Business, but Plaintiff alleges he was not considered for the same reasons.  (*Id.* ¶¶ 35–36.)  Also in 2014, Michael Ivanoff ("Ivanoff"), who is also white and American-born, was hired for the position of Treasurer, and Plaintiff was neither interviewed nor considered.  (*Id.* ¶¶ 37–39.)  And in 2015, Rosa Sira, who is white, American-born, and over a decade younger than Plaintiff, was hired to

replace Ivanoff.  (*Id.* ¶¶ 40–41.)  Finally, in 2015, Donna Dowen, who is American-born, white, and seven or eight years younger than Plaintiff, was hired as Deputy Treasurer, despite not being able to pass the Accountant I test.  (*Id.* ¶¶ 43–44.)  Plaintiff alleges that despite his qualifications and experience, he was not considered for these positions due to his race, national origin, and age.  (*See id.* ¶¶ 30–46.)

In 2018, Plaintiff made an oral complaint to Sira, Senno, and Baird that he was not being paid for overtime work that he had been performing due to his status as a Black, foreign-born employee.  (*Id.* ¶¶ 47–49.)  Although Plaintiff concedes that his complaint was eventually resolved, he alleges that he was subjected to retaliation in the form of "micro-aggressions."  (*Id.* ¶ 51.)  For example, Plaintiff alleges that Sira continually mocked Plaintiff's accent through "facial gestures and shaking of her head" and allegedly falsely claimed not to understand Plaintiff.  (*Id.* ¶ 53(a).)  Plaintiff also describes an incident which allegedly resulted in Senno physically assaulting Plaintiff by pushing Plaintiff out of his office.  (*Id.* ¶ 60.)  This incident allegedly occurred after Plaintiff and Senno had a "heated" exchange in Senno's office about Plaintiff's accounting practices.  (*Id.* ¶ 59.)  Following the incident, Plaintiff received a "negative counseling memo," the contents of which alleged that Plaintiff had acted inappropriately.  (*Id.* ¶ 63–64.)  Plaintiff alleges that the counseling memo was drafted to "build a paper trail for his eventual separation from service."  (*Id.* ¶ 65.)

After Plaintiff submitted a complaint alleging that the incident and subsequent counseling memo were motivated by discrimination, the School District hired a law firm in May 2019 to investigate the claim.  (*Id.* ¶ 67.)  The law firm found no evidence of violent or discriminatory behavior by Senno.  (*Id.* ¶ 70.)  However, Plaintiff alleges that, starting in October 2019, Sira began "intentionally accusing Plaintiff of failing to do tasks that she knew, or had reason to

know, he had already performed, or in other instances, falsely accusing Plaintiff of failing to do tasks that she knew, or reasonably should have known, were *not* within Plaintiff's work purview." (*Id.* ¶ 77.)  This culminated in a November 14, 2019 meeting between Baird, Plaintiff, and his union representative regarding Plaintiff's alleged insubordination. (*Id.* ¶ 82.)  Plaintiff alleges that Sira was ultimately forced to withdraw her accusations of insubordination. (*Id.* ¶ 83.)

Plaintiff filed a complaint with the Rockland County Human Rights Commission and the U.S. Equal Employment Opportunity Commission on December 12, 2019, alleging age, race, and national origin discrimination, as well as retaliation. (*Id.* ¶ 84.)

Plaintiff also alleges that in March 2020, the School District did not initially provide him with a laptop to enable him to work from home, causing him to fall behind in work. (*See id.* ¶¶ 86–97.)  Plaintiff further alleges that in September 2020, Defendants denied him medical accommodation for laser surgery for retinal detachment by refusing to reassign one of his projects to other employees. (*Id.* ¶¶ 99–103.)  Finally, Plaintiff alleges that when he sought to take an FMLA leave of absence due to anxiety and depression caused by Defendants' discrimination and retaliation, Defendants sent him "harassing emails" by asking him to send back any school district records that he had at home and provide computer passwords, even though Plaintiff alleges that he did not have such records or recall any passwords. (*Id.* ¶¶ 106–09.)

Plaintiff alleges six (6) causes of action: (1) age and race discrimination, hostile work environment, and retaliation under § 1983 against all Defendants; (2) race discrimination, prior alienage discrimination, hostile work environment, and retaliation under § 1981 against the Individual Defendants; (3) race discrimination, national origin discrimination, hostile work

environment, and retaliation under Title VII against the School District; (4) age discrimination, hostile work environment, and retaliation under the ADEA against the School District; (5) FMLA interference against all Defendants; and (6) violations of the Rehabilitation Act against the School District.  (*See id.* ¶¶ 122–33.)  Plaintiff alleges that as a result of Defendant's actions, he has suffered "extreme anxiety and depression" and "humiliation and extreme mental anguish," which has resulted in Plaintiff seeking treatment from mental health professionals.  (*Id.* ¶¶ 113–17.)  Plaintiff seeks an award of damages for pain and suffering and for past and future loss of compensation.  (*Id.* Part, VI(a)–(e).)  He also seeks punitive and/or liquidated damages, as well as costs and reasonable attorney's fees.  (*Id.*)

B.  Procedural History

Plaintiff filed his Complaint on December 24, 2020.  (Dkt. No. 1.)  On February 11, 2021, the Parties agreed via stipulation to extend the time for Defendants to answer until March 1, 2021.  (Dkt. No. 8.)  On March 2, 2021, Defendants filed a pre-motion letter outlining the grounds for their anticipated Motion To Dismiss.  (Dkt. No. 9.)  On March 19, 2021, Plaintiff filed a letter seeking leave to file an Amended Complaint, (Dkt. No. 11), which the Court granted the same day, (Dkt. No. 12).  Plaintiff filed his Amended Complaint on April 2, 2021.  (Dkt. No. 13.)  On April 16, 2021, Defendants filed another pre-motion letter outlining the grounds for their anticipated Motion To Dismiss.  (Dkt. No. 14.)  Plaintiff did not file a response.  (*See* Dkt. No. 15.)

On May 27, 2021, Defendants filed their Motion To Dismiss and accompanying papers. (Dkt. Nos. 16–19.)  Defendants wrote to the Court on June 29, notifying the Court that Plaintiff had not yet filed an Opposition.  (Dkt. No. 20.)  The Court directed Plaintiff to respond by July 2, 2021, or it would deem the Motion to be fully submitted.  (Dkt. No. 21.)  After seeking an

extension, (*see* Dkt. No. 22), on July 5, 2021, Plaintiff submitted his Opposition, (Dkt. No. 23).

After requesting an extension, (*see* Dkt. No. 25), Defendants filed their Reply and accompanying

papers on July 22, 2021, (Dkt. Nos. 26–27).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will .

. . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.  But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that

the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed.

R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012).  Additionally, as discussed above, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F.*, 199 F.3d at 107 (quotation marks

omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

    1. Timeliness of Claims

As an initial matter, Defendants argue that certain of Plaintiff's claims are time barred.

Defendants first argue that Plaintiff's Title VII and ADEA claims regarding events prior to

February 15, 2019 are time-barred.  (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem") at

5 (Dkt. No. 19).)  The Court agrees, except with respect to Plaintiff's hostile environment claims,

discussed *infra*.  "As a precondition to bringing suit [under Title VII or the ADEA] in federal

court, a plaintiff must first pursue available administrative remedies and file a timely complaint

with the [Equal Employment Opportunity Commission ("EEOC")] within 300 days of an

unlawful employment practice."  *Yu v. City of New York,* 792 F. App'x 117, 118 (2d Cir. 2020);

*see also Impellizzeri v. New York*, No. 17-CV-230, 2021 WL 4844275, at *2 (N.D.N.Y. Oct. 18, 2021) ("A plaintiff who wishes to pursue a federal employment discrimination suit under Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act."); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008) ("Under the ADEA, [the plaintiff] was required to file a charge with the EEOC within 300 days of the allegedly unlawful employment practice."). Plaintiff filed his EEOC Charge on December 12, 2019. (Am. Compl. ¶ 84.) Thus, Plaintiff's non-hostile work environment claims under Title VII and the ADEA pre-dating February 15, 2019—which is 300 days before December 12, 2019—are dismissed as untimely. *See Impellizzeri*, 2021 WL 4844275, at *4 (dismissing the plaintiff's Title VII claims based on events occurring prior to the 300-day deadline as time-barred); *Brooking v. New York State Dep't of Tax'n & Fin.*, No. 15-CV-510, 2016 WL 3661409, at *6 (N.D.N.Y. July 5, 2016) (same).

Defendants next argue that Plaintiff's § 1983 claims regarding events prior to December 24, 2017 are also time barred, given § 1983's three-year statute of limitations. (Defs.' Mem. at 5.) Defendants are correct that claims under § 1983 are subject to a three-year statute of limitations. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011). There is, however, an exception for "continuing violations." Under the continuing-violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *see*

9

*also Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 412 (N.D.N.Y. 2005) (noting "the Second Circuit's 'broad view of the application of the continuing violation doctrine to statutory remedies other than Title VII [,]' such as section 1983" (quoting *Oteri-Harkins v. City of New York*, No. 97-CV-2309, 1998 WL 817689, at *6 (E.D.N.Y. Feb. 5, 1998)).

In *Isbell v. City of New York*, 316 F. Supp. 3d 571, 586 (S.D.N.Y. 2018), the court found that the plaintiff "plausibly present[ed] a continuous policy or practice of discriminatory treatment and retaliatory conduct" where the plaintiff alleged both a general pattern of discriminatory conduct, as well as a few discrete events which occurred within the limitations period. *Id.* Here, similarly, "[w]ith respect to Plaintiffs' discrimination and retaliation claims, Plaintiff[], for the most part, do[es] not provide precise dates for the alleged mistreatment, and instead attempt[s] to establish a pattern of ongoing conduct by referring to [Defendants'] practices and consistent behavior." *Id.* For example, Plaintiff alleges that Defendants "exhibited a pattern of email abuse, shrill disagreements, and harassment concerning Plaintiff's work purview." (Am. Compl. ¶ 85.) Plaintiff also alleges that Sira exhibited "a pattern . . . of intentionally accusing Plaintiff of failing to do tasks that she knew . . . he had already performed, or in other instances, of falsely accusing Plaintiff of failing to do tasks that she knew. . . were not within Plaintiff's work purview." (*Id.* ¶ 77.) In addition, Plaintiff also alleges acts of discrimination and retaliation within the limitations period. For example, Plaintiff alleges that in late April 2019, after the confrontation between Plaintiff and Senno regarding accounting practices, Plaintiff received a negative counseling memo. (*See id.* ¶ 63.) As another example, Plaintiff alleges that in March 2020, after Defendants made the decision that "all essential staff work would be done from employee's homes," Defendants did not provide Plaintiff with a laptop to work from home. (*See id.* ¶¶ 86–88.) Accordingly, the Court finds that Plaintiff's § 1983

claims fall under the continuing violation exception and are not time barred.  *See Sunshine v. Long Island Univ.*, 862 F. Supp. 26, 29 (E.D.N.Y. 1994) (finding continuing violation where the plaintiff "alleged both a series of related acts and a continuing policy of discrimination").

Plaintiff next argues that his hostile environment claims, brought under § 1981, § 1983, Title VII, and the ADEA, are not time-barred.  (Pls.' Mem. in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") at 2 n.1 (Dkt. No. 23).)  The Court agrees.  In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), "the Supreme Court explained that 'a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" *Bermudez*, 783 F. Supp. 2d at 582.  *Isbell* is instructive here:

> [The] [p]laintiffs' claims premised on a hostile work environment are also not time-
> barred.  Because such claims generally allege repeated conduct and not, as with acts of
> discrimination, conduct that is a discrete unlawful act, a hostile work environment claim
> . . . will not be time barred so long as all acts which constitute the claim are part of the
> same unlawful employment practice and at least one act falls within the time period. . . .
> [The] [p]laintiffs allege numerous actions that are part of the alleged unlawful
> employment practice that occurred within the limitations period. . . .  As a result,
> Plaintiffs' hostile work environment claims, whether brought under § 1983 [or] § 1981
> . . . are timely.

*Isbell*, 316 F. Supp. 3d at 586 (quotations marks and citations omitted).  Accordingly, Plaintiff's hostile environment claims are timely.

### 2. Discrimination Claims

To state a claim for discrimination under § 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting under color of state law."  *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)) (quotation marks omitted).  A state employee acting in an official capacity is acting "under color

of state law." *Id.*  Plaintiff alleges, and Defendants do not appear to dispute, that Defendants, who are employees of the School District, acted under "color of state law."  The Court agrees. *See id.* at 89 (finding that the defendants' actions were "under color of state law" where the defendants were public school employees who had input into personnel decisions such as hiring, firing, and discipline of employees).

"Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quotation marks omitted).  "Thus, for a § 1983 discrimination claim to survive . . . a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting under color of state law." *Id.*

Claims for discrimination under Title VII, the ADEA, and § 1981 are analyzed under the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (evaluating ADEA claim under the *McDonnell Douglas* framework); *Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir. 1984) (same for § 1981).  "Under *McDonnell Douglas*, [the] plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination."  *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).  "The burden of production then shifts to [the] defendant[ ], who must offer through the introduction of admissible evidence a non-discriminatory reason for [its] actions that, if believed by the trier of fact, would support a

finding that unlawful discrimination was not a cause of the disputed employment action." *Id.*  If

the defendant meets this burden, the plaintiff "then must show that the proffered reason was

merely a pretext for discrimination, which may be demonstrated either by the presentation of

additional evidence showing that the employer's proffered explanation is unworthy of credence,

or by reliance on the evidence comprising the prima facie case, without more." *Id.*  (quotation

marks omitted).

To establish a prima facie case of discrimination, a plaintiff must show that "(1) []he is a

member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse

employment action; and (4) the circumstances give rise to an inference of discrimination."

*Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas,* 411

U.S. at 802).  As it concerns the fourth prong, "a plaintiff need only give plausible support to

a *minimal inference* of discriminatory motivation." *Vega*, 801 F.3d at 84 (quotation marks

omitted) (emphasis added). Nevertheless, "a discrimination complaint . . . must [still] at a

minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from

conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d

Cir. 2014) (alterations and quotation marks omitted).

It is important to note, "a plaintiff is not required to plead a *prima facie* case

under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to

dismiss." *Vega,* 801 F.3d at 84 (quotation marks omitted); *see also O'Toole v. Cty. of Orange*,

255 F. Supp. 3d 433, 437–38 (S.D.N.Y. 2017) (same); *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-

1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) (A "[p]laintiff need not make out a

prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a

short and plain statement of the claim that shows that [ ]he is entitled to relief and that gives [the

defendant] fair notice of the age discrimination claim and the grounds upon which it rests."
(italics omitted)).  However, "the elements of a prima facie case may be used as a prism to shed
light upon the plausibility of the claim." *Littlejohn v. City of N.Y.,* 795 F.3d 297, 311 n. 9 (2d
Cir. 2015) (quotation marks omitted).  Indeed, "[a]lthough [the pl]aintiff need not allege facts
sufficient to make out a prima facie case for any of h[is] discrimination claims in h[is]
[c]omplaint, the elements thereof provide an outline of what is necessary to render h[is] claims
for relief plausible." *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at
*5 (S.D.N.Y. June 28, 2011); *see also Ndremizara v. Swiss Re Am. Holding Corp*., 93 F. Supp.
3d 301, 312 (S.D.N.Y. 2015) (same) (collecting cases); *Barker v. UBS AG*, No. 09-CV-2084,
2011 WL 283993, at *5 (D.Conn. Jan. 26, 2011) ("[E]ven though establishing a prima facie case
of age discrimination is not necessary to survive a motion to dismiss, courts do use the standard
as a guidepost when determining whether the plaintiff has provided the defendant with fair notice
of her claim, as required by the Federal Rules of Civil Procedure.").

Here, Defendants appear to concede that Plaintiff meets the first two elements of a prima
facie case.  (Defs.' Mem. at 6–10.)  Defendants argue, however, that Plaintiff has not plausibly
established the third and fourth elements: that he suffered an adverse employment action, and
that the circumstances give rise to an inference of discrimination.  (*Id*.)  "To constitute an
adverse employment action in the context of a discrimination claim, an action must cause 'a
materially adverse change in the terms and conditions of employment.'" *Henry v. NYC Health &
Hosp. Corp*., 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548
F.3d 70, 78 (2d Cir. 2008)).  "To be materially adverse, a change in working conditions must be
more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of
such a change include termination of employment, a demotion evidenced by a decrease in wage

or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Id.* (quoting *Mathirampuzha*, 548 F.3d at 78).

Liberally construed, Plaintiff alleges that the counseling memo is an adverse employment action.  (Pls.' Opp'n at 19–20.)  However, the Second Circuit has held that, "in the context of the issuance of a 'counseling memo,' that criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 570 (2d Cir. 2011).  "Even if the information in the counseling memoranda was false or misleading, this does not constitute an adverse employment action." *Ziyan Shi v. New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) (citing *Cody v. Cty. of Nassau*, 345 Fed. App'x 717, 719 (2d Cir. 2009) (summary order); *cf. White v. Dep't of Correctional Servs.*, 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (finding that a counseling memorandum could constitute an adverse action in combination with a notice of discipline).  Therefore, to the extent that Plaintiff claims that the counseling memo constitutes an adverse employment action, (*see* Am. Compl. ¶ 63), it is insufficient on its own.

Plaintiff also argues that Sira's refusal to approve Plaintiff's requested overtime pay is an adverse employment action, (*see* Am. Compl. ¶ 47), and district courts have found that to be the case.  *See Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020) ("[T]he denial of opportunity to work overtime or earn greater responsibility may be considered sufficiently adverse to support a discrimination claim."); *DeLuca v. Sirius XM Radio, Inc*., No. 12-CV-8239, 2017 WL 3671038, at *13 (S.D.N.Y. Aug. 7, 2017) (change in workplace responsibilities or denial of opportunities that results in revocation or denial of overtime eligibility may have an

adverse impact on employment); *Rivers v. N.Y.C. Hous. Auth.*, 176 F. Supp. 3d 229, 252 (E.D.N.Y. 2016) ("A deprivation of the opportunity to earn overtime can be an adverse employment action."). *But see Henry*, 18 F. Supp. 3d at 405–06 (finding that the plaintiff's "[v]ague" and "conclusory allegation that she was denied overtime, without more" was insufficient to plead an adverse employment action). Accordingly, Plaintiff has sufficiently pled an adverse employment action sufficient to survive a motion to dismiss.

As for the fourth element, "[a]n inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to plaintiff's protected class, . . . or indirectly by an allegation that plaintiff was treated different from and less favorably than similarly situated peers." *Roache,* 487 F. Supp. 3d at 172 (citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984) and *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)). "Clearing this low pleading threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff,'" *id.* (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)), "the evaluation of which is more appropriately considered at summary judgment or at trial," *id.* (citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019)). Alternatively, "[the] plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87).

Here, Plaintiff does not offer any nonconclusory facts supporting the conclusion that Defendants discriminated against him because of his race, age, or national origin. For example, Plaintiff alleges that "unlike everybody else in the Defendants' business office—all of whom

were white, American-born, and mostly younger than Plaintiff—that he was not being paid for the considerable overtime that he had been performing."  (Am. Compl. ¶ 47.)  Significantly, Plaintiff does not identify a single comparator, other than referring to his Caucasian, American-born co-workers in the aggregate.  "When relying on evidence of such disparate treatment, a plaintiff must show []he was 'similarly situated in all material respects to the individuals with whom she seeks to compare herself.'"  *Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (quoting *Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003)); *see id.* (dismissing discrimination claim even where the plaintiff identified five comparators, because her complaint and opposition were "devoid of any facts to suggest she was discriminated against due to her national origin or skin tone.").  In *Roache*, the court found that the plaintiff "plausibly contends that he was demoted and was denied opportunities to work overtime afforded not merely to similarly situated, but to less qualified, colleagues.  Such allegations, albeit suffering from a lack of specificity, thus placing them on the razor's edge of plausibility, are sufficient to create an inference of discrimination."  487 F. Supp. 3d at 172. Here, unlike in *Roache*, Plaintiff has not identified *any* of his other colleagues, much less explained how they are less qualified than Plaintiff.  Plaintiff's claims can similarly be distinguished from *Johnson v. Long Island Univ.*, where the court found that the plaintiff "stated a plausible inference of discrimination based on disparate treatment with respect to the claims that [the defendant] treated him differently by denying him the opportunity to earn additional compensation and by assigning him significantly more work than his fellow hall directors, but just barely."  58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014).  Here, unlike in *Johnson*, Plaintiff does not allege that he was denied overtime despite being assigned more work.  And given that the plaintiff's claims in Johnson "barely" passed muster, *id.*, Plaintiff's claims regarding overtime do

not cross the line of plausibility.  *See also Ariz v. Metro. Transportation Auth.*, No. 17-CV-4491, 2019 WL 2613476, at *4 (S.D.N.Y. June 26, 2019) (finding that the plaintiff's "assorted rejections for some overtime hours . . . '[does not] support[ ] a sufficient rational inference of discrimination such that a reasonable jury could find in the plaintiff's favor.'" (quoting *Moy v. Perez*, 2016 WL 5239611, at *2 (S.D.N.Y. Sept. 21, 2016), *aff'd*, 712 Fed. App'x. 38 (2d Cir. 2017)).  Plaintiff also alleges that Sira "mock[ed] Plaintiff's accent by way of facial gestures and shaking of her head, and claim[ed] to not understand him."  (Am. Compl. ¶ 53(a)).  However, Plaintiff does not specify how Sira's alleged facial gestures or head shaking were connected to his race, national origin, or race.  This is not to suggest that mocking a person's accent through facial expressions or body language could never plausibly suggest discriminatory intent.  The Court recognizes that "there surely may be cases where comments about a person's accent may be probative of discriminatory intent, . . . but this is not such a case."  *Thelusma v. New York City Bd. of Educ.,* No. 02-CV-4446, 2006 WL 2620396, at *3 (E.D.N.Y. Sept. 13, 2006); *see also Manessis v. New York City Dept. of Transp.*, No. 02-CV-359, 2003 WL 289969, at *8 (S.D.N.Y. Feb., 10, 2003) ("[I]t would be an inferential leap to infer that a comment about an employee's accent suggests an underlying bias against persons of that national origin."), *aff'd*, 86 Fed. App'x. 464 (2d Cir. 2004).  Similarly, it is not clear from the face of the Amended Complaint that Sira *pretended* not to understand Plaintiff; it is equally plausible that in some circumstances, she did not understand Plaintiff.  And "[s]tanding alone . . . an employer's reference to a[n] [employee's] language deficiencies or accent is not evidence of discriminatory animus."  *Vidal v. Metro-N. Commuter R. Co*., No. 12-CV-248, 2014 WL 3868027, at *11 (D. Conn. Aug. 6, 2014).

Further, in reviewing the sufficiency of a complaint's allegations, a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." *Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (alterations and quotation marks omitted)).  Indeed, "without sufficient facts, even the most sincerely held beliefs [of discrimination] do not comprise a sufficient basis for withstanding a 12(b)(6) attack." *Williams v. Wellness Medical Care, P.C.*, No. 11-CV-5566, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013).  Plaintiff therefore "does nothing more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore, it must have happened because I am (fill in the blank with the applicable protected categor[ies])." *House v. Wackenhut Servs., Inc.*, No. 10-CV-9476, 2012 WL 4017334, at * 1 (S.D.N.Y. Aug. 20, 2012); *see also Jackson v. Elmhurst Hosp. Ctr.*, No. 10-CV-5248, 2012 WL 868965, at *7 (E.D.N.Y. Mar. 14, 2012) (dismissing discrimination claims where the plaintiff "offer[ed] virtually no connection between any disability" and her leave time denial, her attempt to take a sick day, and a warning issued by her employer for inappropriate behavior).

In sum, Plaintiff fails to plausibly allege discriminatory intent, and therefore, Plaintiff's discrimination claims cannot survive Defendants' Motion.

### 3. Retaliation Claims

"As in discrimination claims, the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega*, 801 F.3d at 91; *see also Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (finding that "the same standards and burdens apply to [retaliation] claims under both" Title VII and the ADEA); *Patterson*, 375 F.3d at 225 ("Most of the core substantive standards that apply to claims

of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause.").  "To make out a prima facie case of retaliation, a plaintiff must demonstrate that '(1) []he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

First, an employee's complaint may qualify as protected activity, satisfying the first element of this test, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001).  A "protected activity" does not have to "rise to the level of a formal complaint."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  It includes activities such as "making complaints to management," *id.* (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)), and may be in the form of an informal "objection voiced to the employer."  *Barcher v. New York Univ. Sch. of Law*, 993 F. Supp. 177, 184 (S.D.N.Y. 1998), aff'd, 172 F.3d 37 (2d Cir. 1999).  Plaintiff alleges that he engaged in protected activity on two occasions: first, in April 2018, by making "an oral, but formal complaint . . . that unlike everybody else in the Defendants' business office, all of whom were white, American-born, and mostly younger than Plaintiff[,] that he was not being paid for the considerable overtime that he had been performing," (Am. Compl. ¶ 47), and second, in early April 2019 by making a formal discrimination complaint after an incident which resulted in Seno allegedly pushing Plaintiff out of his office, (*see id.* ¶¶ 55 –62).

Puzzlingly, Defendants use a First Amendment analysis to argue that Plaintiff did not engage in protected activity.  (*See* Defs.' Mem. at 11–13.)  Defendants seem to be confusing "protected speech" and "protected activity."  Although plaintiffs can bring claims for First Amendment retaliation, *see Montero v. City of Yonkers*, 890 F.3d 386, 393 (2d Cir. 2018), Plaintiff does not allege that his First Amended rights were violated.  Rather, Plaintiff alleges that Defendants retaliated against him in violation of his rights under the Fourteenth Amendment, not the First, (*see* Am. Compl. ¶ 123 (Defendants "violated the Equal Protection and Due Process Clauses of the 14th Amendment of the United States Constitution as made actionable by 42 U.S.C. [§] 1983.")).  Thus, Defendants' arguments miss the mark.

Many district courts have found that the plaintiffs engaged in protected activity when they filed internal or external discrimination complaints against their employer.  *See, e.g.*, *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 290 (S.D.N.Y. 2019) (finding that the plaintiff engaged in protected activity by filing an internal grievance complaining of racial discrimination); *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990–91 (S.D.N.Y. 2017) (finding that the plaintiff engaged in protected activity when he reported his concerns about discriminatory conduct toward him and others); *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 253 (E.D.N.Y. 2013) (finding that the plaintiff engaged in protected activity when she "filed [an] EEOC charge complaining of gender discrimination"); *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001) (finding that the plaintiff "successfully allege[d] that he was engaged in a protected activity" when he "lodg[ed] . . . several internal complaints regarding [the] defendants' discriminatory conduct.").  As previously mentioned, Plaintiff alleges that he made his informal oral complaint to Sira, Senno, and Baird,

(Am. Compl. ¶ 47), and his formal complaint to Baird, (*id.* ¶ 55).  Plaintiff has thus adequately

alleged that he engaged in protected activity by making his two complaints.

  Second, Defendants do not appear to dispute that they were aware of Plaintiff's

complaints.  Plaintiff has thus adequately alleged the second element.

  Third, in the context of a retaliation claim, "an adverse employment action is any action that

'could well dissuade a reasonable worker from making or supporting a charge of

discrimination.'"  *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 57, (2006)).  Plaintiff alleges that, as a result of the complaints he made, Defendants

placed a negative counseling memo in Plaintiff's personnel file.  (*See* Am. Compl. ¶ 63.)

However, like in the discrimination context, "[c]ounseling memoranda do not constitute adverse

employment actions in retaliation claims under Title VII . . . ."  *Verdi v. City of New York*, 306 F.

Supp. 3d 532, 544 (S.D.N.Y. 2018) (citing *Tepperwien,* 663 F.3d at 570).  "Further, Plaintiff

provides the Court with no reason to believe that the criticism was unwarranted or that the

criticism had any tangible job consequences."  *Pacheco v. New York Presbyterian Hosp*., 593 F.

Supp. 2d 599, 629 (S.D.N.Y. 2009).  Rather, Plaintiff claims that the counseling memo "was

designed to dissuade Plaintiff from making other complaints and to build a paper-trail for his

eventual separation from service."  (Am. Compl. ¶ 65.)  But Plaintiff cannot allege an adverse

employment action that has not yet happened.  Indeed, Plaintiff is still employed by the School

District.  (*See* Defs.' Mem. at 1 ("Plaintiff is, and has been, an accountant for the [School]

District, for over 20 years" (citing Am. Compl. ¶1))).  Thus, "[t]here is no evidence that [the

counseling memo] had any actual material, as opposed to a speculative, impact on [Plaintiff's]

job."  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 214 (E.D.N.Y. 2014); *see also*

*Stoddard v. Eastman Kodak Co.,* 309 Fed. App'x 475, 478–79 (2d Cir. 2009) (finding that a

"single memorandum criticizing [the plaintiff's] job performance," did not constitute an adverse employment action, since memorandum did not "result[ ] in any alteration of her working conditions or job responsibilities.").

Plaintiff also alleges other adverse employment actions, including Sira "mock[ing] Plaintiff's accent by way of facial gestures," "having obligatory meetings" with Senno over "false inter-personnel [sic] issues," (Am. Compl. ¶ 53), having Sira accuse Plaintiff of either doing work he had already done or asking him to do work that was not "within Plaintiff's work purview," (*id.* ¶ 77), and Plaintiff not initially being provided with a laptop to work from home, (*id.* ¶¶ 87–92). However, "Plaintiff's allegations describe petty slights and minor annoyances, and do not depict adverse actions sufficient to support a viable retaliation claim." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 518 (E.D.N.Y. 2019) (quoting *Collymore v. City of New York*, No. 16-CV-8270, 2018 WL 3014093, at *9 (S.D.N.Y. June 14, 2018)).  Indeed, courts have routinely found similar allegations to be insufficient to support a finding of adverse employment actions. *See Blessing v. J.P. Morgan Chase & Co*., 394 F. Supp. 2d 569, 577 (S.D.N.Y. 2005) (employee's subjective dissatisfaction with employment action does not constitute evidence of adverse employment action); *Cramer v. Fedco Auto. Components Co*., No. 01-CV-757, 2005 WL 839671 at *9, *11 (W.D.N.Y. Apr. 12, 2005) (That defendant "enforced break time and phone usage policies in a discriminatory manner, refused to grant [plaintiff] time off on a few occasions and made one sarcastic comment" did not constitute adverse employment actions because "[s]uch minor inconveniences, absent some other negative result, are not, as a matter of law, adverse employment actions."); *Pomilio v. Wachtell Lipton Rosen & Katz*, No. 97-CV-2230, 1999 WL 9843, at *8 (S.D.N.Y. Jan. 11, 1999) ("[The] plaintiff's allegations with respect

to any sarcastic comments, demeaning comments, insults, threats, and intimidation do not

constitute an adverse employment action" (quotation marks omitted)).

In sum, Plaintiff fails to allege an adverse employment action, and Plaintiff's retaliation

claims are therefore dismissed.

### 4. Hostile Work Environment Claims

"A hostile work environment claim requires a showing [1] that the harassment was

'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment,' and [2] that a specific basis exists for imputing the objectionable

conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v.

Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *Perkins v. United States Dep't of the

Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same).  This

standard applies to Plaintiff's Title VII, § 1981, and § 1983 claims.  *See Cano v. SEIU Loc.

32BJ*, No. 19-CV-8810, 2021 WL 4480274, at *5 (S.D.N.Y. Sept. 30, 2021) ("Hostile work

environment claims under Title VII [and] Section 1981 . . . are judged by the same standard.");

*Isbell*, 316 F. Supp. 3d at 591 (analyzing § 1981 and § 1983 hostile environment claims under

the same standard).  A plaintiff must also plausibly allege "that the hostile work environment

was caused by animus towards her as a result of [him] membership in a protected class."

*Bermudez*, 783 F.Supp.2d at 573 (citation omitted).  "It is 'axiomatic that mistreatment at work,

whether through subjection to a hostile environment or through other means, is actionable . . .

only when it occurs because of an employee's protected characteristic,' such as race or gender."

*Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting

*Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Feingold*, 366 F.3d at 150. "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Isbell*, 316 F. Supp. 3d at 591. "[E]xcessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

In *Littlejohn*, 795 F.3d at 321, the Second Circuit found that the plaintiff's allegations that the employer made negative statements about the plaintiff, was impatient and used harsh tones with the plaintiff, distanced herself and declined to meet with the plaintiff, required the plaintiff to recreate work, wrongfully reprimanded the plaintiff, increased the plaintiff's schedule, and was sarcastic to the plaintiff, did not support a finding of a severe or pervasive hostile work environment sufficient to survive a motion to dismiss. And in *Isbell*, 316 F. Supp. 3d at 591–92, the court found that plaintiff failed to state a claim for hostile environment where the employer allegedly refused to authorize overtime pay, criticized the plaintiff's work, used a "harsh and sarcastic tone," conducted a corrective interview with the plaintiff, and disciplined the plaintiff for inadequate work product.

25

Here, Plaintiff's allegations are similar to those in *Littlejohn* and *Isbell*.  For example, Plaintiff alleges that he was denied overtime, (Am. Compl. ¶¶ 47–49); that Sira mocked Plaintiff's accent through "facial gestures and shaking of her head" and allegedly falsely claimed not to understand Plaintiff, (*id.* ¶ 53(a)); that Sira accused Plaintiff of failing to do tasks that he had already performed and accused Plaintiff of failing to do tasks that she knew were not "within Plaintiff's work purview," (*id.* ¶ 77); that Plaintiff received a "negative counseling memo," (*id.* ¶ 63–64), and that Defendants did not initially provide him with a laptop to enable him to work from home, (*id.* ¶¶ 86–97).  Like in *Littlejohn* and *Isbell* these types of allegations are insufficient to survive a motion to dismiss.

Similarly, Plaintiff's contention that he was subjected to an unspecified "spate of micro-aggressions," (*see* Am. Compl. ¶ 51), is insufficient to plausibly allege a hostile work environment claim.  *See Murray v. Dutchess Cty. Exec. Branch*, No. 17-CV-9121, 2019 WL 4688602, at *5 (S.D.N.Y. Sept. 25, 2019) (dismissing plaintiff's hostile work environment claim despite his allegation that he suffered multiple, specified "micro-inequities"); *Ariz*, 2019 WL 2613476, at *6 (dismissing plaintiff's hostile work environment claim despite his allegations that he was subjected to unspecified micro-aggressions and two-race based comments made by a coworker).

Even Plaintiff's claim that Senno physically pushed him out of his office is insufficient to support a claim for hostile work environment.  As one court noted, "[c]ourts rarely find limited incidents of physical violence without a sexual element to establish a hostile work environment." *De La Pena*, 953 F. Supp. 2d 393, 417 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 98 (2d Cir. 2014) (quoting *Gerald v. Locksley*, 849 F. Supp. 2d 1190, 1234 (D.N.M. 2011)); *see also Divers v. Metropolitan Jewish Health Systems*, No. 06-CV-6704, 2009 WL 103703, at *16 (E.D.N.Y. Jan.

14, 2009) (noting that the plaintiff's allegations of physical contact were not sufficient to support a hostile work environment claim because "it was an isolated occurrence"), *aff'd*, 383 Fed. App'x. 34 (2d Cir. 2010); *Aina v. City of New York*, No. 05-CV-7533, 2007 WL 401391, at *1, *6 (S.D.N.Y. Feb. 6, 2007) (dismissing a hostile work environment claim after the court concluded that the "isolated" incident, which involved a supervisor "slam[ing] the door in such a violent manner that it almost hit [plaintiff's] knee" did not support a cause of action.); *Ricks v. Conde Nast Publications, Inc.*, 92 F. Supp. 2d 338, 348 (S.D.N.Y. 2000) (holding that an allegation that a defendant hit the plaintiff on the shoulder and pushed her out of her office was insufficiently severe to establish a hostile work environment claim), *aff'd*, 6 Fed. App'x. 74 (2d Cir. 2001).

Finally, Plaintiff fails to establish causation—namely, that the conduct that Plaintiff claims created a hostile environment was the result of his race, nationality, or age.  Plaintiff makes no allegations establishing a connection between the alleged hostile environment and his protected characteristics.  His allegations are wholly conclusory.  The Second Circuit and district courts within it have dismissed similar cases, where the plaintiff makes only conclusory allegations of causation.  *See Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (affirming dismissal of hostile work environment claims based on failure to plead facts indicating causation); *Sosa*, 368 F. Supp. 3d at 516 (dismissing claim where the plaintiff failed to make any "non-conclusory allegation[s] that suggest[ed] that the conduct that is the basis of the hostile work environment was as a result of her race or skin color"); *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 684 (S.D.N.Y. 2018) (dismissing claim where the plaintiff "has not alleged sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII."); *De La Pena*, 953 F. Supp. 2d at 418 (dismissing hostile work environment

27

claims because the plaintiff "failed to plead that a hostile work environment was created and existed because of his protected status, either race, color, or national origin" and failed to "plead a [causal] connection between his protected status and the alleged hostile work environment").

Accordingly, Plaintiff's hostile work environment claims are dismissed.

### 5. Reasonable Accommodation Claim

"Under the Rehabilitation Act, recipients of federal funds must provide 'reasonable accommodations' to qualified disabled individuals that permit such individuals meaningful access to their programs and services." *Harris v. Mills*, 478 F. Supp. 2d 544, 548 (S.D.N.Y. 2007), *aff'd,* 572 F.3d 66 (2d Cir. 2009) (citing *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). "The majority of courts that have addressed the discrimination claims of plaintiffs with moderate vision problems have held that those plaintiffs were neither 'disabled' within the meaning of the ADA nor 'handicapped' within the meaning of the Rehabilitation Act." *Sweet v. Elec. Data Sys., Inc.*, No. 95-CV-3987, 1996 WL 204471, at *5 (S.D.N.Y. Apr. 26, 1996) (collecting cases); *see also Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir. 1997) (noting that the analysis of whether a plaintiff is disabled is identical under the ADA and the Rehabilitation Act).

Plaintiff alleges that Defendants "failed to reasonably accommodate Plaintiff's vision disability" under the Rehabilitation Act, (Am. Compl. ¶ 133), after Defendants refused to reassign one of Plaintiff's projects when he was experiencing eye strain after he had laser surgery due to "retina wear and tear" after a prior "retinal detachment surgery," (*id.* at ¶ 99 – 100). However, Defendants argue that Plaintiff's claim must be dismissed because he fails to allege a disability. (Defs.' Mem. at 19–20.) The Court agrees.

"The courts that have declined to find a plaintiff disabled have relied on the plaintiff's ability to engage fully in most major life activities and have concluded on the facts particular to each case that moderate vision impairment, although certainly an undesirable inconvenience, does not substantially limit an individual's ability to see, to read, or to work." *Sweet,* 1996 WL 204471, at *5 (finding that the plaintiff's vision problems, which stemmed from his once-detached retina, did not qualify as a disability under the ADA or Rehabilitation Act even where the plaintiff could not "read or work on the computer for extended periods without a break," because "[v]ision problems, whether caused by faulty structure, overuse, or mistreatment of the eyes, are commonplace"); *see also Sherman v. Peters*, 110 F. Supp. 2d 194, 200 (W.D.N.Y. 2000) (finding no disability under the Rehabilitation Act where the plaintiff, who lost vision in one eye, experienced eye strain in the other eye); *accord Meyers v. Bd. of Educ.,* No. 07-CV-5058, 2010 WL 4387503, at *5–6 (D.N.J. Oct. 29, 2010) (finding that the plaintiff, who had a detached retina, was not disabled within the meaning of the ADA).

Accordingly, the Court dismisses Plaintiff's reasonable accommodation claim because Plaintiff has failed to allege that he has a disability under the Rehabilitation Act.

### 6. FMLA Interference Claim

To establish a claim for FMLA interference, Plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice to defendants of his intention to take leave; and (5) defendants denied him benefits to which he was entitled by the FMLA. *See Graziadio v. Culinary Inst. of A*m., 817 F.3d 415, 424 (2d Cir. 2016); *see also Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (applying same five-factor test).

Plaintiff alleges that when he took FMLA leave, Defendants "sought to make it difficult for him to do so and sought to make it difficult for him to quietly enjoy his leave." (Am. Compl. ¶ 106.) In support Plaintiff cites two allegedly "harassing" emails Senno sent Plaintiff in the beginning of his leave in October 2020. First, Senno emailed Plaintiff on October 2, 2020, "explicitly and threateningly stating that he still wanted to speak with Plaintiff about the project he had requested a reasonable accommodation on when he got back." (*Id.* ¶ 107). Second, Senno emailed Plaintiff on October 14, 2020, asking him if he "had any school district records at his home, and if so, he would send a courier to pick up those records. In the same email he asked for the passwords for certain computer files that he believed [P]laintiff had." (*Id.* ¶ 108.). However, "[P]laintiff's few documented work-related communications with [Senno] during h[is] leave do[es] not rise to the level of FMLA interference as a matter of law." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009). Defendants concede elements one through four of the test. (*See* Defs.' Mem. at 17.) Defendants argue, however, that Plaintiff does not meet the fifth element; that is, that Defendants did not deny him benefits to which he was entitled by the FMLA. (*Id.* at 17–18.)

"Fielding occasional [communications] about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights. When limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such [communications]." *Id.* (dismissing FMLA interference claim in part where temporary replacement called temporary replacement called once or twice to ask, 'Just where things were in the computer [and] general direction[s] on where to find certain things.'" (citation omitted)). *See also Museau v. Heart Share Hum. Servs. of New York,* No. 12-CV-185, 2014 WL 1277006, at *5

(E.D.N.Y. Mar. 27, 2014) ("[T]o the extent [the defendant] occasionally called or emailed Plaintiff to discuss [the company's] operations while she was on leave, his contact does not rise to the level of interference with Plaintiff's exercise of her rights under the FMLA.").

The present case can be distinguished from *Zahler v. Empire Merchants, LLC*, No. 11-CV-3163, 2012 WL 273698, at *9 (E.D.N.Y. Jan. 31, 2012), in which the court denied the employer's motion to dismiss where the employer repeatedly called the employee during her leave and "demanded that [she] use her computer to produce work product." *Id*. Here, unlike in *Zaher*, Plaintiff only alleges that Senno contacted him twice.  In neither email did Senno ask Plaintiff to produce work product while out on FMLA leave.  In the first email, Senno asked Plaintiff to speak to him about a project when he returned.  (Am. Compl. ¶ 107.)  And in the second email, Senno asked for the sort of information sought by the employer in *Reilly*, 620 F. Supp. 2d at 537.

Accordingly, Plaintiff fails to state a claim for FMLA interference.

7. *Monell* Claims

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of America*, 723 F.3d 399, 405–06  (2d Cir. 2013).  However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009); *see also Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *report and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Jan. 3, 2011) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *report and recommendation adopted sub nom.*, *Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 36–37 (describing the second category for establishing *Monell* liability); *Patterson*, 375 F.3d at 226–27 (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a

municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

Defendants argue that Plaintiff cannot establish *Monell* liability because Defendants are not final policymakers. (Defs.' Mem. at 22–23.) The Court agrees. New York law provides that the Board of Education "shall have power, and it shall be its duty . . . [t]o establish such rules and regulations concerning the order and discipline of the schools . . . as [it] may deem necessary to secure the best educational results." N.Y. Educ. Law § 1709; *see also T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 373 (S.D.N.Y. 2014) (same). The Board of Education appoints superintendents who are delegated with the powers of "supervision and direction of . . . assistant and other superintendents, directors . . . janitors and other persons employed in the management of the schools or the other educational activities of the district." *Weinstein v. Garden City Union Free Sch. Dist.*, No. CV 11-2509, 2013 WL 5507153, at *17 (E.D.N.Y. Sept. 30, 2013) (quoting N.Y. Educ. Law § 1711). "Thus, even the personnel decisions and actions of the Superintendent

constitute mere recommendations that must ultimately be adopted by the final policymaking body, the Board of Education. . . . . Nowhere in the Education Law are assistant superintendents or directors authorized with any specific authority." *Weinstein,* 2013 WL 5507153, at *17 (citation omitted).

Indeed, "[e]ven assuming [Defendants' alleged] discipline, evaluations, and harassing behavior were final decisions, those acts did not set final municipal policy because [Defendants] lacked policymaking authority under state law." *Agosto v. New York City Dep't of Educ*., 982 F.3d 86, 101 (2d Cir. 2020). "Put differently, these [School] District employees could not have established the purported municipal policies that violated Plaintiff's constitutional rights, and their [actions therefore] cannot amount to deliberate indifference to Plaintiff's rights." *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2018 WL 3315738, at *20 (S.D.N.Y. July 5, 2018), *aff'd,* 771 F. App'x 121 (2d Cir. 2019).

Accordingly, to the extent that Plaintiff attempts to allege *Monell* violations, those claims are dismissed.

### 8. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. (Defs.' Mem. at 23–24.) The Court will not opine on whether Defendants are entitled to qualified immunity, however, because Plaintiff has not plausibly pled that he is entitled to relief. *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [Defendants] did not violate Plaintiff's [constitutional or statutory] rights, there is no need to consider if [Defendants] [are] entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 Fed. App'x. 32 (2d Cir. 2014).

<u>III. Conclusion</u>

For the reasons explained herein, the Court grants Defendants' Motion To Dismiss. Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will likely result in dismissal of the claims against Defendant with prejudice.

Given the passing of Plaintiff's counsel, the Court will hold a status conference on April 27, 2022 at 10:00 am.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 16), and mail a copy of this Opinion & Order to Plaintiff at 9 Kwiecinski Street, West Haverstraw, NY, 10993.

SO ORDERED.

DATED:          March  22, 2022
                White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE